UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF LOUISIANA

IN RE:                                                    CASE NO. 17-10698

WALLACE, RUSH, SCHMIDT, INC.                              SECTION "B"

     DEBTOR                                               CHAPTER 11

## MEMORANDUM OPINION

This matter came before the court on the objection of the debtor, Wallace, Rush, Schmidt, Inc., to the proofs of claim filed by the Tort Claimants[1]; the amended objection to the proofs of claim (P-293), and the various responses thereto.  Also before the court is a Motion for 2004 Examination (P-396) and a Motion for Leave to File Proofs of Claim (P-407) filed by the Tort Claimants.  For the reasons set forth below, the court finds that the Tort Claimants did not have adequate notice of the claims bar date, and the late filed claims are allowed.  The court also grants the motion for the 2004 examination of the debtor and finds that the motion for leave to file proofs of claim is moot as the court is allowing the claims that have already been filed.

## Background Facts

The debtor filed a petition for relief under Chapter 11 of the U.S. Bankruptcy Code on March 24, 2017.[2]  On April 5, 2017 the debtor filed its schedules and statement of financial affairs.  On April 26, 2017 the debtor amended its schedules and statement of financial affairs.  Both times, the suits against the debtor by the Tort Claimants were listed only in the statement of financial affairs.  The debtor did not list the Tort Claimants as general unsecured creditors with

---

[1]  Objection to claim of David Jones (P-207), Princess Sherrod (P-211), Emiliano Acosta (P-219)(P-223)(P-226), Jennifer Guidry Chauvin (P-186), Nicholas & Rebekah Saale (P-215), Jenyfer Espinal Almendarez (P-220), Sulma Almendarez-Rivas (P-224), Keyla Gonzalez (P-296), Mariela Bardales (P-298), Kenia Gonzalez (P-300), Glenny Berroa (P-302), Fatima Berroa (P-304), Daniella Maciel DeSouza (P-344), and Marcus & Christina Tate, individually and on behalf of minor children (P-378) (collectively, the "Tort Claimants").  The claims, which are all based on lawsuits filed in state court and the estimated amounts of the claims are round figures that range from $400,000 to $7 million.
[2]  11 U.S.C. §101 et seq.

disputed, unliquidated or contingent claims. Thus, at the beginning of the case, the Tort

Claimants did not receive notice of the filing of the bankruptcy case or notice of the meeting of

creditors.[3]

Eventually the debtor filed a suggestion of bankruptcy in the other suits brought by the

tort claimants.[4] The tort claimants began filing motions for relief from stay seeking to proceed

with their state court suit(s).[5] The court granted these motions because, as the debtor points out

in its brief, 28 U.S.C. § 157(b)(2)(B) states that bankruptcy courts may not rule on the

"liquidation or estimation of contingent or unliquidated personal injury tort or wrongful death

claims against the estate for purposes of a distribution in a case under title 11."[6] Thus, as is its

general practice in these types of cases, the court lifted the stay to allow the litigation to proceed

to judgment in state court, with the claimants then directed to return to this court in the event

they were successful in obtaining a judgment against the debtor. It appears from the court's

review of the record and the response to questions directed to the Clerk's Office, that once a Tort

Claimant filed a motion for relief from stay, the claimant would then be added to the list of

parties who received BNC notices in this case from the court.[7]

---

[3]  These notices are mailed out by the bankruptcy court at the commencement of the case. If creditors are not
properly listed by the debtor in the mailing matrix, or on the schedules, then the creditors are not served. The receipt
of service entered into the case by the Bankruptcy Noticing Center ("BNC") shows that none of the Tort Claimants
were served by the BNC. (P-18) and (P-19).

[4]  The debtor states in its brief it filed the suggestion of bankruptcy on March 31, 2017 in one of the cases in U.S.
District Court, EDLA Case No. 16-15149, however, that case was closed on March 29, 2017, so it unclear as to
whether that particular notice of the bankruptcy filing would have been received by the Tort Claimants. Another
suggestion of bankruptcy was filed on August 30, 2017 in Case No. 660857 in the 19th JDC for East Baton Rouge
Parish, State of Louisiana. There may be other pending litigation; these are the only two suits of which the court is
aware at this time.

[5]  The first motion for relief from stay was filed on May 17, 2017, and the most recent one was filed on May 29,
2018. To date 10 motions for relief from stay have been filed by Tort Claimants.

[6]  The debtor claims in its brief that the Tort Claimants are arguing that the bankruptcy court should try the tort
claims, but the court has not found anywhere that the Tort Claimants have asserted that proposition.

[7]  Once upon a time, the BNC noticed almost everything filed in the case to the creditors. Several years ago this
changed, and attorneys are now required to serve most pleadings requiring service themselves, and then file a
certificate of service. A few things such as the creditors' meeting, and certain orders of the court are still noticed by
the BNC.

No motion for a claims bar date was ever filed in this case.  On August 21, 2017, the debtor filed a disclosure statement and plan.  The court's order setting the hearing on approval of disclosure statement was entered on August 22, 2017.  That order set September 29, 2017 as the last day to file proofs of claim in this matter.[8]  Local Rule 3015-1 requires a plan proponent, in this case the debtor, to serve a copy of the plan and disclosure statement on the entire mailing matrix.  The debtor's certificate of service shows that none of the Tort Claimants were served with the original plan or disclosure statement, despite the facts that their clams are mentioned in the plan and disclosure statement.[9]  The debtor also filed a certificate of service showing that none of the Tort Claimants were served with the notice of disclosure statement hearing that contained the bar date for filing proof of claims.[10]  The order setting the disclosure statement hearing that contained the bar date is not served by the BNC, rather it is the responsibility of the debtor's attorney to serve this order, so it is clear from the record none of the Tort Claimants received actual notice of the bar date for filing proofs of claim.

The first Tort Claimant to file a proof of claim did so on January 8, 2018, presumably after her personal injury attorney realized that this would be prudent.  Several other Tort Claimants filed proofs of claim on January 10 and 11, 2018.  Another group filed proofs of claim on April 9, 2018 and two final claims were filed on May 31, 2018 and June 28, 2018.  The hearing on approval of the debtor's disclosure statement was set for October 6, 2017, and an order approving the disclosure statement was entered on October 16, 2017.  A plan confirmation was then scheduled for January 18, 2018.  The debtor then sought to continue the hearing, and it

---

[8]  (P-120).  When a Chapter 11 debtor does not file a motion to set a claims bar date, the court picks a date based on the hearing date it sets for the disclosure statement.  In this court that bar date is generally 7 days before the date picked for hearing the disclosure statement.
[9]  (P-114)
[10]  (P-121)

was continued to March 1, 2018. The debtor then asked for and received a second, and third

continuance pushing the hearing date back to April 24, 2018 and May 31, 2018 respectively.

The debtor then amended its plan, and the confirmation hearing was held on May 31, 2018.

Confirmation was denied by order dated June 6, 2018, and a third plan was filed and set for

hearing on August 10, 2018. This hearing too was continued and the confirmation hearing is

now set on September 6, 2018. In the midst of all this, the debtor filed objections to the proofs

of claim filed by the Tort Claimants, then filed a motion to withdraw the reference of those

objections to the district court, and finally, filed a notice of removal seeking to remove the state

court litigation to federal district court. Several hearings were also scheduled and continued on

the claim objections, and finally, the parties agreed to submit the matter on the briefs.

**Legal Analysis**

**A. Notice Requirements**

Section 521(a)(1) requires the debtor to file a list of creditors. Under Federal Rule of

Bankruptcy Procedure 1007(a), the list of creditors should be a list of *all* creditors, as well as

other entities required to be listed.[11] The definition of "creditor" includes any entity that has a

claim against the debtor.[12] "Claim" is defined as a "right to payment, whether or not such right

is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured,

disputed, undisputed, secured, or unsecured."[13] Under this very broad definition, the Tort

Claimants are "creditors" of the debtor, and should have been listed as such. They should also

have received notices of the claims bar date and disclosure statement and plan hearings. Instead,

---

[11]   4 COLLIER ON BANKRUPTCY ¶ 521.03[1] (Richard Levin & Henry J. Sommer eds., 16th ed.). The treatise further notes: "The debtor is not permitted to omit creditors from the list because the debtor does not want those creditors affected by the bankruptcy case or does not want them to know about the case for any other reason."
[12]   11 U.S.C. § 101(10)(A).
[13]   11 U.S.C. § 101(5)(A).

the first time that the court can find evidence of the debtor making service on the Tort Claimants

of any of these required things that were filed in the case is in an *ex-parte* motion to continue the

plan confirmation hearing filed on January 12, 2018 (P-203).

The debtor argues that the Tort Claimants should have filed a notice of appearance and

request for notice if they wanted to be served with pleadings in the case.  In some larger Chapter

11 cases, after a motion by the debtor that was noticed to *all* creditors, this court has issued

orders limiting notice requirements to the 20 largest unsecured creditors, a few other essential

parties, and those who file a notice of appearance and request for notice.  This is not one of those

cases as no such request to limit notice was filed in this case.  And even if this were one of those

cases it would not have relieved the debtor of its obligation to provide creditors with notice of a

claims bar date, the disclosure statement and the plan of reorganization, which should go out to

all creditors regardless of whether an order limiting notice requirements had been issued or not.

The debtor also argues that the Tort Claimants had actual knowledge of the bankruptcy

proceeding, and thus it was their duty to inform themselves of the claims bar date and file a

timely proof of claim.

> A creditor's claim can be barred for untimeliness only upon a showing that it
> received reasonable notice.  Determining whether a creditor received adequate
> notice depends on the facts and circumstances of each case.  Due process requires
> notice that is reasonably calculated to reach all interested parties, reasonably
> conveys all of the required information, and permits a reasonable amount of time
> for response.  A claimant may therefore file a late proof of claim if he can show
> that a failure to allow the filing would be violative of due process.[14]

In addition to the due process concerns, Federal Rule of Bankruptcy Procedure 2002(a)(7)

requires that known creditors be given at least 21 days notice by mail of the proofs of claim bar

---

[14]  *In re Eagle Bus Mfg., Inc.,* 62 F.3d 730, 735 (5th Cir. 1995), *citing In re Robintech, Inc.*, 863 F.2d 393, 396 (5th Cir.), *cert. denied,* 493 U.S. 811, 110 S.Ct. 55, 107 L.Ed.2d 24 (1989).

date.[15]  Here, unlike in *Eagle,* it is undisputed that the Tort Claimants did not receive notice of

the claims bar date.

In *City of New York v. New York, N.H. & H.R. Co.,* 344 U.S. 293, 73 S.Ct. 299, 97 L.Ed.

333 (1953), the court held that even creditors who have knowledge of a reorganization have the

right to assume that statutory "reasonable notice" will be given them before their claims are

forever barred.

In *Matter of Sam*, 894 F.2d 778 (5th Cir. 1990) the United States Fifth Circuit Court of

Appeal found that a creditor who had not received notice of the last day to file an objection to

discharge, but who had learned about the bankruptcy case 18 days before that deadline had

passed was barred from filing a discharge complaint.  The court distinguished its decision from

the holding in *City of New York,* by stating that the reason the *New York* court had held the

creditor was entitled to actual notice of the bar date was because the setting of the bar date was

left to the discretion of the bankruptcy judge, whereas the bar date for filing discharge objections

is always 60 days after the date of the initial creditors' meeting, and thus the imposition on the

creditor to make an inquiry to determine this fixed date is not so burdensome as to outweigh the

need for expeditious administration of bankruptcy cases.[16]  Thus, at first blush it seems that

under *City of New York* and *Sam,* because the setting of the bar date was at the discretion of the

bankruptcy court, the Tort Claimants were entitled to receive actual notice of the bar date.

But, in *Matter of Christopher*, 28 F.3d 512 (5th Cir. 1994), the court noted that although

*Sam* contains dicta that would support the position that actual notice is required in a situation

where the court sets the claims bar date in a Chapter 11 case, that was not the actual holding in

*Sam.*  The *Christopher* court found that a post-petition creditor with knowledge that the

---

[15]   *In re Eagle Bus Mfg.,* 62 F.3d at 735.
[16]   *Matter of Sam,* 894 F.2d at 781.

bankruptcy case was pending, and who chose to enter into post-petition transactions with the debtor, was not entitled to actual notice regarding the discharge of its claims. The court found that due process constitutional concerns were satisfied by notice adequate to apprise a party of the pendency of an action affecting its rights and timely enough to allow the party to present its objections.[17] Because a post-petition creditor is entitled to many other protections under the Bankruptcy Code, statutory notice of the discharge of a post-petition claim in a Chapter 11 proceeding is not required. The court concluded that formal notice is also not constitutionally required where the post-petition creditor had actual knowledge of the bankruptcy case and waited several years to attempt any action against the debtor.

The court's reading of the case law is that in the Fifth Circuit, knowledge or notice of the existence of the bankruptcy case itself can sometimes substitute for the requirement of actual notice found in the Bankruptcy Code and Rules. But the cases where this was allowed are not directly on point with the facts of this case, where a debtor not only failed to schedule known pre-petition creditors, but also failed to serve them with notices required by both the Bankruptcy Rules and the Local Rules. The court finds that the debtor failed in its obligation to properly serve the Tort Claimants with notice of the bar date, and the proofs of claim filed late by the Tort Claimants should be allowed.

### B. Excusable Neglect

To the extent that the court is incorrect that the late filed proofs of claim should be allowed, and because both parties briefed the argument, the court will also examine whether the late filed proofs of claim may be allowed under FRBP 9006(b)(1) and the "excusable neglect" framework set forth in *Pioneer Inv. Services Co. v. Brunswick Assoc. Ltd. Partnership, et al.,* 507

---

[17] *Matter of Christopher,* 28 F.3d at 519.

U.S. 380, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993).  The *Pioneer* court found that determination of whether a party's neglect of a deadline was excusable was "at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission."[18]  In making a finding of excusable neglect, a court should look at the following factors:  1) the danger of prejudice to the debtor; 2) the length of the delay and its potential impact on judicial proceedings; 3) the reason for the delay, including whether it was within the reasonable control of the movant; and 4) whether the movant acted in good faith.[19]

1) Here the prejudice to the debtor is minimal.  The tort suits were filed well before the bankruptcy case was commenced, and the debtor knew about the tort claimants, so these claims are not a surprise to the debtor.  This is not a situation where a debtor has negotiated a plan, and then was surprised by late filed claims.[20]

2) The length of delay and its potential impact on judicial proceedings.  The debtor claims it is prejudiced because any delay may endanger its settlement with Paychex in this matter, but most of the delays in this matter were caused by the debtor's negotiations with respect to the Paychex claim, and there is no reason why the allowance of the Tort Claimants' claims that the debtor knew about all along will delay plan confirmation any further.  Although the actual dollar value of the Tort Claimants' claims is at present unknown, and will likely take some time to adjudicate, Chapter 11 plans are often confirmed without knowing the outcome of tort litigation.  The confirmation hearing on this plan has been continued several times, and there is no reason that the debtor cannot make provisions in its plan for these claims between now and the September 6, 2018 hearing date that is now set for plan confirmation.  In fact, this court

---

[18]   *Pioneer*, 507 U.S. at 395.
[19]   *Eagle* at 737, *citing Pioneer Inv. Svcs. Co.*
[20]   *See In re Eagle Bus Mfg., Inc.* 62 F.3d at 737-38.

denied confirmation of the last plan because among other things, the debtor paid zero towards these claims in its plan. Thus, the debtor and all of the other creditors are already on notice that these claims need to be included in the plan. There need not be any further delay of these proceedings if the court allows the claims as timely filed.

3) The court finds that the reason for the delay was that the debtor failed to provide actual notice of the claims bar date to the Tort Claimants, and that it appears from the record that once they understood that they needed to file proofs of claim, they did so fairly quickly. Many of the claimants filed their proofs of claim in January 2018, and another large group filed theirs on April 9, 2018. There is one claimant who filed on May 31, 2018, and one who filed on June 28, 2018, and the court is not clear as to why these claimants filed later than the others, but in the event that this information becomes pertinent, the court can always hold a hearing to determine precisely why these claims were later than the others. For the time being, the court holds that the reasons for the delay in filing the proofs of claim were due to the lack of actual notice of the bar date, as represented by the Tort Claimants in their brief.

4) Finally, the court does not find, and there is no allegation of bad faith on the part of the Tort Claimants in filing their proofs of claim untimely, other than a conclusory statement in the debtor's brief that all of the *Pioneer* factors are in its favor.

Thus, because the court finds that all of the *Pioneer* factors weigh in favor of the Tort Claims, the court holds that the claims should be allowed under the excusable neglect standard.

### C. The debtor's other objections to the proofs of claim

The debtor's objections have several other arguments with respect to why the proofs of claim should be disallowed. They all seem to come back to the same basic argument. The debtor's objection seems to be that the debtor feels that it has no liability to the tort claimants.

9

This may eventually be true. But it is not this court's place to determine that, as the debtor has repeatedly argued. But because the claims are contingent, disputed and unliquidated does not mean that the debtor can ignore them in its plan, or that they should be disallowed on that basis without a hearing from a court with jurisdiction to make that determination. The proper procedure with respect to the plan of reorganization is to let a court that does have jurisdiction determine whether the debtor has any liability on those claims, and for the debtor to make provisions in the plan for the event that the debtor does have liability. If the debtor feels strongly that it has no liability to the Tort Claimants, it could certainly choose to pay them nothing under the plan. But if it does so, then it may not also discharge any future claims that may arise from eventual judgments that are handed down by a court of competent jurisdiction.

### D. The Motion for 2004 Examination

The Tort Claimants have also filed a motion for a Rule 2004 examination of the debtor. FRBP 2004 states that on the motion of any party in interest, the court may order the examination of any entity. This examination must relate to the acts, conduct, property, liabilities and financial condition of the debtor. The motion for 2004 examination filed by the Tort Claimants seeks information that is permitted under the scope of Rule 2004. The debtor's objection to the motion is that the claims are late filed, and that they are contingent, disputed and unliquidated claims. The court has already found that the claims are allowed, and as the Bankruptcy Code clearly allows parties with contingent, disputed and unliquidated claims to participate in a case filed under the Bankruptcy Code, the court can see no reason why the Rule 2004 examination of the debtor should not proceed. The court grants the motion. The court orders the parties to cooperate in accommodating the schedule of Arkansas state senator David Wallace, the representative of the debtor designated for the 2004 examination. The court also

orders, however, that the 2004 examination be scheduled quickly enough to allow the Tort

Claimants a meaningful opportunity to take the 2004 examination before the objections to plan

confirmation are due.

    **E.  The Motion for Leave to File Proofs of Claim**

       The Tort Claimants have also filed a motion for leave to file proofs of claim.  The court

understands that given the objections filed by the debtor to the proofs of claim they have already

filed, the Tort Claimants are being careful by also filing a motion for leave to file in the event the

court granted the objection of the debtor.  As already stated above, however, the claims are

allowed, so the court finds that the motion for leave to file proofs of claim is redundant, and thus

moot.

**<u>Conclusion</u>**

       For the reasons set forth above, the court denies the objections to claim insofar as the

debtor argues they should be disallowed as untimely.  The court also grants the motion for 2004

examination of the debtor and finds that the motion for leave to file proofs of claim is moot as

the court is allowing the claims that have already been filed.

       New Orleans, Louisiana, August 14, 2018.

                               Jerry A. Brown
                               U.S. Bankruptcy Judge