**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| IN RE: | CHAPTER 11 |
| WALLACE, RUSH, SCHMIDT, INC., | CASE NO. 17-10698 |
| DEBTOR | SECTION "A" |

**KRISTINA PLAINTIFFS' AMENDED RESPONSE TO DEBTOR'S**
**MOTION TO RE-OPEN CHAPTER 11 CASE TO ENFORCE PLAN PROVISIONS**

**NOW INTO COURT**, through undersigned counsel, come Jennifer Guidry Chauvin, individually and as the administrator of the estate of S.C. and as Tutrix of J.M.C. and J.L.C.; Princess Sherrod on behalf of Minor Child, A.S.; David Jones; Nicholas and Rebekah Saale, individually and on behalf of their Minor Child, C.S.; Sulma Almendarez-Rivas; Jenyfer Espinal Almendare, individually and on behalf of L.E.A.; Emiliano Acosta, individually and on behalf of E.A.; Keyla Gonzalez; Mariela Bardales; Kenia Gonzalez; Glenny Berroa; Fatima Berroa; Daniella Maciel De Souza, on behalf of her minor child, V.M.K.; and, Marcus Tate and Christina Tate, individually and on behalf of the minor children, M.T., A.T., and M.J. (collectively, the "Kristina Plaintiffs"), who, hereby file this amended response to the *Debtor's Motion to Re-open Chapter 11 Case to Enforce Plan Provisions* [Doc. 540] ("Motion to Reopen"), and respectfully represent as follows:

**SUMMARY OF ARGUMENT**

Despite the erroneous assertions of Wallace, Rush, Schmidt, Inc. ("WRS" or "Reorganized Debtor") that its funding obligations under the confirmed chapter 11 plan ("Plan") have been "voided" by virtue of its insurer's payments to Kristina Plaintiffs[1], the Plan requirements remain

---

[1] WRS, without any documented support, erroneously concludes that its insurer's payment to Kristina Plaintiffs "void any/all treatment in Debtor's Confirmed Plan…as to any further liability of the Kristina Plaintiffs." *Supplemental Motion to Reopen*, p. 8.

in full force and effect. Since the hearing on the *Motion to Reopen* and the subsequent filing of WRS' *Supplemental Motion to Reopen* [Doc. 553] ("Supplemental Motion to Reopen"), Kristina Plaintiffs have discovered additional violations by WRS of the Plan requirements. Based on such findings, Kristina Plaintiffs now urge the Court the reopen the above-captioned case ("Bankruptcy Case") for the limited purposes of enforcing WRS' Plan obligations and imposing sanctions upon WRS to prevent its continued abuse of process.

## RELIEF SOUGHT

Kristina Plaintiffs request that the Reorganized Debtor's *Motion to Reopen* be granted; but, that the Bankruptcy Case only be reopened for the limited purposes of entering appropriate orders to: (1) enforce the Reorganized Debtor's Plan obligations with regard to treatment of Class 6 Claims; and, (2) impose sanctions under Section 105 of the Bankruptcy Code to prevent continued abuse of process by the Reorganized Debtor.

## BASIS FOR RELIEF

**A. THE REORGANIZED DEBTOR'S FUNDING OBLIGATIONS UNDER THE PLAN REMAIN IN FULL FORCE AND EFFECT.**

As set forth in Kristina Plaintiffs' original response [Doc. 548] ("Original Response") to the *Motion to Reopen*, WRS has failed to support its position that the Global Settlement Agreement [Doc. 545-1], and the payments made in connection therewith, have "voided" or, in any way, affected WRS' funding obligations under its confirmed chapter 11 plan[2] ("Plan").

---

[2]On September 13, 2018, the Bankruptcy Court entered an order [Doc. 438] confirming The Third Amended Plan of Reorganization [Doc. 359] for the Debtor, as modified on August 30, 2018 pursuant to Immaterial Modifications to the Plan [Doc. 417] and Modifications to the Plan submitted by the Debtor at the direction of the Court [Doc. 433] following hearing on confirmation (collectively the "Modifications") (the Third Amended Plan of Reorganization and the Modifications are referred to as "the Plan").

1. <u>WRS' arguments are wholly unsupported.</u>

Through its *Supplemental Motion to Reopen*, WRS once again *erroneously* argues that it is entitled to recover funds that it deposited into the Reserve Fund[3] because the Kristina Plaintiffs have allegedly (a) executed releases in favor of WRS through the Global Settlement Agreement and (b) dismissed their related lawsuits[4] against WRS and other co-defendants ("<u>State Court Actions</u>"). Despite these arguments, the documents presented by WRS in support of its *Motion to Reopen* only serve to refute the assertions contained in the *Motion to Reopen*, as supplemented. First, **the Global Settlement Agreement expressly includes both a limited release of WRS by Kristina Plaintiffs <u>and</u> a reservation of Kristina Plaintiffs' rights to recover any amounts that WRS has already deposited or will, in the future, deposit into the Reserve Fund[5]**. *See Motion to Reopen*, Exhibit B [Doc. 545-1] (Global Settlement Agreement, pp. 5-6). Secondly, Kristina Plaintiffs have not dismissed the State Court Actions – **only claims against National Union**, WRS' insurer, **were dismissed from the State Court Actions**. *See Motion to Reopen*, Exhibit 10 [Doc. 540-12].

2. <u>WRS' funding obligations were expressly designed to supplement WRS' insurance coverage.</u>

---

[3] The "Reserve Fund" is defined in Section 4.5 of the Plan as "a separate reserve bank account for which both the Debtor, and a designee of the Class 6 Claimants [Kristina Plaintiffs] are authorized signatories required for any withdrawal or transfer; and, other than expressly set forth herein, no withdrawal from or change to the Reserve Account shall be made without authorization of both of the aforementioned signatories." Plan §4.5 further details the exact methodology to be utilized in calculating the required deposits by WRS.

[4] The lawsuits filed by the Kristina Plaintiffs against WRS and others have been consolidated into Case No. 651661, currently pending before the 19th Judicial District Court, Parish of East Baton Rouge, State of Louisiana.

[5] While, in its *Supplemental Motion to Reopen,* WRS reproduced *a portion* of Section 4 of the Global Settlement Agreement, *i.e.,* §4(a), WRS neglected to include §4(b) of the agreement, which documents the preserved rights of the Kristina Plaintiffs.

The treatment of Class 6 Claims (Claims of Kristina Plaintiffs) is set forth in §4.5 of the Plan. Specifically, the claim treatment includes the establishment of the Reserve Fund for purposes of satisfying, at least partially, any judgments or settlements in favor of the Kristina Plaintiffs. Given the magnitude of their claims ("<u>Claims</u>"), including those for wrongful death and personal injuries, the Kristina Plaintiffs reasonably believed (and still believe) that WRS' insurance coverage would be insufficient to satisfy all anticipated judgments or settlements associated with their Claims. They, therefore, objected to confirmation of WRS' prior chapter 11 plan [Doc. 312], which provided that the Kristina Plaintiffs (Class 6) would be paid only through WRS' insurance coverage. As set forth in its Order denying plan confirmation [Doc. 353], the Bankruptcy Court agreed that confirmation of such a plan could not be accomplished.

Following the Bankruptcy Court's denial of plan confirmation, WRS ultimately presented the Plan, which provides for funding *directly by WRS*. The Plan expressly states that *"[i]n addition to any insurance coverage that may also be available for payment of the Claims in Class 6, the Debtor shall pay"* a minimum of $240,000 and up to $2.5 million into the Reserve Fund. *See* Plan, §4.5 (emphasis added). Given the clear language of the confirmed Plan, coupled with WRS' inability to confirm a plan relying solely on insurance coverage for payment of Class 6 Claims, it is evident that the Reserve Fund is a funding mechanism, created through the Plan, to **supplement** any insurance coverage available for payment of Kristina Plaintiffs' Claims. As a result, and because Kristina Plaintiffs' rights to recover from the Reserve Fund were explicitly reserved in the Global Settlement Agreement, WRS' Plan obligations related to the Reserve Fund cannot be avoided through execution of the Global Settlement Agreement or any insurance payments made in connection therewith.

B. **THE REORGANIZED DEBTOR IS IN DEFAULT UNDER THE TERMS OF THE PLAN.**

Under the terms of the Plan, WRS is required to deposit into the Reserve Fund a minimum of $4,000 per month; and, on a quarterly basis, 30% of its income as calculated on IRS Form 1120, Line 11 (less the monthly payments for the corresponding quarter, which apply as a credit toward the quarterly Reserve Fund payment). With regard to treatment of the Claims, the Plan provides, in pertinent part:

*"In addition to any insurance coverage that may also be available for payment of the Claims in Class 6, the Debtor shall pay $240,000 over the five-year term of the Plan, which amount shall be paid in 60 consecutive monthly installments of $4,000.00* beginning thirty (30) days after the Effective Date of the Third Amended Plan as Modified by the First and Second Immaterial Modification, and continuing on the same date on each month thereafter. The Debtor shall provide this $4,000.00 per month as a contingent contribution to be set aside in the "Reserve Fund" (defined below) for the Class 6, Unliquidated, Contingent Claims as fair and equitable treatment in accordance with 11 U.S.C. §1129. *The "Reserve Fund" shall mean a separate reserve bank account for which both the Debtor, and a designee of the Class 6 Claimants are authorized signatories required for any withdrawal or transfer: and, other than expressly set forth herein, no withdrawal from or change to the Reserve Account shall be made without authorization of both of the aforementioned signatories.*

*Further, Debtor shall set aside 30% of the Company income on IRS Form 1120, Line 11, paid quarterly, less the $4,000.00 per month into the Reserve Fund, for the associated quarter. Such quarterly payments shall begin with the quarter in which the Effective Date falls, beginning in the year 2018 and ending in 2023, or for the life of the Plan. The Reserve Fund will have a cap and limit of $2.5 Million dollars, to be paid should any Judgment(s) be entered into the record assigning liability to Debtor or settlement agreement(s) be entered into by the Debtor during the life of the Plan.*

More specifically, quarterly, Debtor shall pay into the Reserve Fund an amount equal to 30% of Line 11 of the IRS Tax Return, Form 1120 to the same extent as Line 11 has been calculated for the Tax Years 2015 and 2016. *This quarterly Reserve Fund payment will be calculated and deposited and an Accounting will be provided to Counsel for the Class 6 Unliquidated, Contingent Claims on the payments to the Reserve Fund; however, this amount shall take into consideration and deduct the $4,000.00 per month contribution to the Reserve Fund already deposited by Debtor. The accounting shall comply with general accepted accounting principles and, at Class 6 Claimants' request, shall be subject to Audit at the cost of such Unliquidated, Contingent Claimants."* Plan, §4.5 (emphasis added).

1. <u>The Reorganized Debtor has withheld hundreds of thousands of dollars from its quarterly Reserve Fund deposits.</u>

Following the filing of the *Supplemental Motion to Reopen*, Kristina Plaintiffs requested an updated accounting of WRS' deposits into the Reserve Fund[6]. Upon receipt thereof, Kristina Plaintiffs have discovered that WRS has, without authority, withheld *at least* $317,266.85 from its deposits into the Reserve Fund. As set forth in the Plan excerpt above, Kristina Plaintiffs purposely insisted on a detailed methodology for calculating WRS' quarterly payments so that there could be no confusion or misinterpretation regarding the appropriate amounts to be deposited quarterly by WRS. Nevertheless, upon analysis of the recent accounting provided by WRS, Kristina Plaintiffs have learned that WRS has disregarded the Plan requirements and instead calculated its income on a basis different than what is specified under the Plan. Through November 2021, such deviation by WRS has resulted in a Reserve Fund deficiency of *at least* $317,266.85. This deficiency amount is based upon Kristina Plaintiffs' review of the accounting records provided by WRS and the corresponding terms of the Plan dictating how such payments are to be calculated.

2. <u>The Reorganized Debtor has failed to deposit anything into the Reserve Account for over one year.</u>

In addition to failing to properly calculate and remit its quarterly deposits, WRS, without authority or even notice, ceased all deposits into the Reserve Fund in the fourth quarter of 2021. Although the Global Settlement Agreement clearly contemplates additional deposits being made into the Reserve Fund, WRS has not made a single monthly or quarterly payment since November 3, 2021, which date coincides with the time that the Global Settlement Agreement was finalized.

---

[6] Pursuant to the Stipulation [Doc. 526], dated June 14, 2019, WRS is required to provide a quarterly income statement to Kristina Clamaints in connection with the quarterly payments due under the Plan; however, WRS has failed to comply with the terms of the Stipulation.

Such failures of WRS represent clear violations of its obligations under the Plan. Kristina Plaintiffs request that the Bankruptcy Case be reopened for purposes of enforcing WRS' Plan obligations.

**C.** **SANCTIONS ARE WARRANTED TO PREVENT THE WRS' CONTINUED ABUSE OF PROCESS.**

Through its *Original Response*, Kristina Plaintiffs identified both a series of actions taken by WRS that qualify as abuse of process, as well as the decisions of *multiple Courts* which rejected WRS' attempts to avoid its responsibilities related to the Claims and drive up Kristina Plaintiffs' costs to enforce WRS' obligations. Included within that discussion was WRS' prior failure to make deposits into the Reserve Fund. It was only after Kristina Plaintiffs' objected[7] to WRS' motion for final decree, on the basis of WRS' failure to make Plan payments, that WRS began making deposits into the Reserve Fund. *See Stipulation between Debtor and Kristina Plaintiffs* [Doc. 526], wherein the parties acknowledged WRS' deposit of $172,957.02 into the Reserve Fund *following* Kristina Plaintiffs' objection to entry of a final decree. Over the last twelve (12) months, WRS has again consistently failed to remit payments into the Reserve Fund.

The deliberate actions of WRS, taken to avoid liability related to the Claims, have caused Kristina Plaintiffs to incur significant legal expenses both during the pendency of the Bankruptcy Case and again now through WRS' *Motion to Reopen*. WRS' current attempt to avoid its obligations warrant sanctions under Section 105 of the Bankruptcy Code. Kristina Plaintiffs request that the Bankruptcy Case be reopened to allow them to pursue such sanctions against WRS with the intention of preventing its continued abuse of process.

**WHEREFORE**, for the reasons set forth above, Kristina Plaintiffs respectfully request that this Court reopen the Bankruptcy Case for the limited purposes of entering appropriate orders

---

[7] On May 29, 2019, Kristina Plaintiffs filed an Objection [Doc. 519] to WRS' motion for Final Decree.

to enforce WRS' obligations under its confirmed Plan and imposing sanctions to prevent the continued abuse of process.

Respectfully submitted,

**THE STEFFES FIRM, LLC**

/s/ Barbara B. Parsons
Barbara B. Parsons (#28714)
13702 Coursey Blvd., Building 3
Baton Rouge, Louisiana 70817
Telephone: (225) 751-1751
Facsimile: (225) 341-1241
E-mail: bparsons@steffeslaw.com

*Bankruptcy Counsel for Kristina Plaintiffs*

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| IN RE: | CHAPTER 11 |
| WALLACE, RUSH, SCHMIDT, INC. | CASE NO. 17-10698 |
| DEBTOR | SECTION "B" |

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing *Amended Response to Motion to Reopen Chapter 11 Case* has been served via Email through this Court's CM/ECF Electronic Notification System to the following parties:

Christy R. Bergeron on behalf of Creditor Paychex Advance, LLC CBergeron@RLLaw.com
Miriam Brooks on behalf of Interested Party Miriam Remer Georges-Pierre, PLLC mbrooks@rgpattorneys.com
Richard Theodore Haik, Jr. on behalf of Creditor Nicholas Saale richardh@mmrblaw.com
Kenneth H. Hooks, III on behalf of Interested Party Princess Sherrod kenny@dodsonhooks.com
Mary S. Langston on behalf of U.S. Trustee Office of the U.S. Trustee Mary.Langston@usdoj.gov
Andrew A. Lemmon on behalf of Interested Parties Adriane Gaines and Toni Ingram andrew@lemmonlawfirm.com
Christopher McCall on behalf of Movant Daniella Maciel DeSouza cmccall@baggettmccall.com
Edward Lee Moreno on behalf of Interested Party Emiliano Acosta emoreno@redmannlaw.com
H. Edward Sherman on behalf of Creditor Jennifer Guidry Chauvin nolaatty4u@gmail.com
Matthew Paul Skrabanek on behalf of Interested Party David Jones paul@psbfirm.com
Dwazendra J. Smith on behalf of Interested Party Marcus Tate dwa@doranlawfirm.com
Office of the U.S. Trustee USTPRegion05.NR.ECF@usdoj.gov
David Vicknair on behalf of Creditor De'Marcus Thomas david@svhclaw.com
Phillip K. Wallace on behalf of Debtor Wallace, Rush, Schmidt, Inc. PhilKWall@aol.com

Baton Rouge, Louisiana, this 30th day of November, 2022.

/s/ Samantha J. Chassaing
Samantha J. Chassaing