**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| IN RE: | CHAPTER 11 |
| WALLACE, RUSH, SCHMIDT, INC., | CASE NO. 17-10698 |
| DEBTOR | SECTION "A" |

**JOINT MOTION OF CLASS 6 CLAIMANTS TO REOPEN CHAPTER 11 CASE**

Now into court, through undersigned counsel, come Jennifer Guidry Chauvin, individually and as the administrator of the estate of Spencer Chauvin and as Tutrix of Jade Michel Chauvin and Jude Lewis Chauvin; Princess Sherrod on behalf of Minor Child, A.S. David Jones; Nicholas and Rebekah Saale, individually and on behalf of their Minor Child, C.S. Sulma Almendarez-Rivas; Jenyfer Espinal Almendare, individually and on behalf of L.E.A.; Emiliano Acosta, individually and on behalf of E.A.; Keyla Gonzalez; Mariela Bardales; Kenia Gonzalez; Glenny Berroa; Fatima Berroa; Daniella Maciel De Souza, on behalf of her minor child, V.M.K.; and, Marcus Tate and Christina Tate, individually and on behalf of the minor children, M.T., A.T., and M.J. (collectively, the "Claimants"), each, a party-in-interest and creditor of the above-captioned debtor ("Debtor" or "WRS"), hereby file this motion (the "Motion"), pursuant to sections 105 and 350 of title 11 of the United States Code (the "Bankruptcy Code"), and Rules 3020 and 5010 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), seeking entry of an order (i) reopening the Chapter 11 case of the above captioned Debtor, and (ii) approving the delay of Plan distributions for Class 6 Claims, as agreed to by all Class 6 Claimants pursuant to the terms of the *Third Amended Plan of Reorganization of Wallace, Rush, Schmidt, Inc., as Immaterially Modified* [Doc. 359,417, 433] (the "Plan"), confirmed by this court by an order dated September

13, 2018 [Doc. 438].

In support of this *Motion*, Claimants incorporate by reference the *Declaration of Kenneth H. Hooks, III in Support of Claimants' Joint Motion to Reopen Chapter 11 Case,* accompanying this *Motion* (the "Hooks Declaration"), a copy of which is attached hereto as Exhibit A, and respectfully represent as follows:

## PRELIMINARY STATEMENT

Claimants, creditors and parties-in-interest in the above captioned chapter 11 case ("Chapter 11 Case"), bring this *Motion* to reopen the above captioned case and obtain approval of the new date for Plan distributions for Class 6 Claims, pursuant to agreement of all Class 6 Claimants as permitted under the Plan. Since the filing of its Chapter 11 Case, WRS has consistently attempted to avoid and/or delay litigation with and prevent any payment to Claimants beyond what was available from the Debtor's insurers, using various legal proceedings to dispose of liability for Claimants' claims. WRS' latest tactic includes the recent removal of Claimants' litigation to MDLA Court (defined below) in April of 2023.

Following multiple unsuccessful attempts to discharge liability and/or delay pending litigation with Claimants, the Debtor finally negotiated and entered into a comprehensive scheme to address Claimants' claims. This compromise was a key component of the Plan ultimately confirmed by this Court in September of 2018. Unfortunately, the Debtor has not only failed to live up to its P l a n obligations, but it has also continued to cause delays in the litigation[1] involving Claimants.

By this *Motion*, Claimants seek entry of an order reopening the Chapter 11 Case for the purpose of approving a new Plan distribution date for Class 6 Claimants ("Distribution Date") as

---

[1] Each of Claimants' lawsuits were specifically identified in the Plan. *See* Plan (Doc. 359, pp. 13-14).

contemplated under the Plan.

## JURISDICTION AND VENUE

1.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.

This *Motion* is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(L), and (O). Venue is proper in this district pursuant to 28 U.S.C. § 1409.  The predicates for the relief requested herein are Bankruptcy Code sections 105(a) and 350, and Bankruptcy Rules 3020 and 5010.

## FACTUAL BACKGROUND

### A.      Prepetition Litigation

2.      Prior to commencement of the Chapter 11 Case, Claimants asserted tort claims ("Claims") against the Debtor and others, through approximately 20 separate state court lawsuits filed in multiple forums in Louisiana (collectively, "State Court Actions").  The State Court Actions stem from a deadly bus crash, which occurred on August 28, 2016, and involved multiple fatalities and injuries.  In a recent pleading filed in the removed State Court Actions, WRS acknowledged that it commenced the Chapter 11 Case on March 24, 2017 "[a]s a result of this incident and the ensuing litigation"[2].

### B.      The Chapter 11 Case

3.      Although named as a defendant in the various State Court Actions prompting the Chapter 11 Case filing, the Debtor failed to schedule any of the State Court Actions' claims or provide notice to Claimants of, among other things, the claims bar date established in the Chapter 11 Case. [Doc. 411]. In addition, through initial versions of its reorganization plan, the Debtor attempted to discharge all liability for the Claims, while failing to provide notice of such plan and disclosure statement to Claimants. [Doc. 411].  While the Debtor discussed the State Court Actions

---

[2] *Defendant Wallace, Rush, Schmidt, Inc.'s Motion to Transfer Venue*, attached hereto as **Exhibit B**.

in its Second Amended Plan, it refused to provide any treatment for the Claims, other than the potential for payment from the Debtor's insurer. [Doc. 312]. The Bankruptcy Court ultimately denied plan confirmation on the basis that the plan violated the absolute priority rule. [Doc. 353].

4.      Thereafter, the Debtor filed its Third Amended Plan and initial modification thereto, which: (a) established a class of claims (Class 6) that included the Claims, and (b) provided for a $100,000 "contingent contribution" payment to be shared among all Class 6 claim holders (in addition to the Debtor's insurance coverage). [Doc. 361]. By the time of Plan confirmation, Claimants had filed claims against the Debtor's estate totaling approximately $29 million. [Doc. 560]. Given the magnitude of their Claims, Claimants reasonably believed that the Debtor's insurance coverage ($3 million) would be insufficient to satisfy all anticipated judgments or settlements associated with their Claims.

5.      Shortly after these Third Amended Plan filings, WRS initiated attempts to have the Claims resolved in federal court.  First, on July 17, 2018, WRS moved to withdraw the reference of the Bankruptcy Court with regard to allowance of the Claims.  Specifically, WRS urged the U.S. District Court for the Eastern District of Louisiana ("EDLA Court") to adjudicate Claimants' personal injury and wrongful death claims, despite the existence of numerous ongoing State Court Actions. The EDLA Court ultimately denied WRS' motion, finding that "[i]t would be a waste of judicial resources to withdraw the reference as to claims that are proceeding in the Louisiana state courts".  *See* Exhibit C, EDLA Court Order and Reasons. Next, on August 4, 2018, WRS and its principals removed one of the State Court Actions to the U.S. District Court for the Middle District of Louisiana ("MDLA Court"), despite the automatic stay having been previously modified to allow such Claimant to continue litigation against WRS in state court. The MDLA Court ultimately abstained from hearing the matter and remanded the case in March of 2019 to

state court by order entered in *Princess Sherrod v. Wallace, Rush, Schmidt, Inc., et al.,* Civil Action No. 18-746-SDD-EWD, U.S. District Court for the Middle District of Louisiana. *See* Exhibit D, Order of Remand.

6.      Subsequently in August 2018, the Bankruptcy Court entered an order (a) denying WRS' objections to the allowance of Claimants' claims and (b) granting Claimants' discovery motion (over WRS' objections). As a result of that order, Claimants were permitted to conduct discovery and WRS finally agreed to negotiate terms for agreed plan treatment of the Claims. Upon reaching such an agreement with Claimants, WRS filed its second immaterial modification to its Third Amended Plan. The Bankruptcy Court confirmed the Third Amended Plan, as modified by the second modification and a third modification on September 13, 2018 [Doc. 438].

7.      With respect to the Claims, the confirmed Plan established a Reserve Fund into which the Debtor was required to make monthly and quarterly deposits for the benefit of Claimants through the last quarter of 2023 or the conclusion of the Plan period, which period is still ongoing. [Doc. 433].  The Reserve Fund was created to satisfy any Claim liability of the Debtor, exceeding the Debtor's insurance coverage, as established through a judgment or settlement agreement in favor of one or more Claimants. [Doc. 433].

### C.      Post-Confirmation Events

8.      Approximately eight months after the Plan was confirmed, the Debtor moved for entry of a final decree.  Claimants objected to entry of a final decree based on the Debtor's failure to comply with its Plan obligations, specifically its failure to deposit quarterly payments into the Reserve Fund.  [Doc. 519]. Approximately two weeks after Claimants filed their objection, the Debtor deposited $172,957.02 into the Reserve Fund; and, Claimants and the Debtor entered into a stipulation resolving the objection.  [Doc. 526].

### i.      Consolidation of State Court Actions

9.      To facilitate the efficient prosecution of their Claims, Claimants agreed to consolidate the approximately 20 State Court Actions and have all Claims heard at the same time in a single forum, *i.e.*, the 19th Judicial District Court, Parish of East Baton Rouge, State of Louisiana ("19th JDC").

### ii.      COVID-19 Pandemic and other unavoidable delays

10.      During the time period in which Claimants moved multiple courts in approximately 20 separate State Court Actions to consolidate and transfer the State Court Actions to a single division of the 19th JDC, onset of the COVID-19 pandemic occurred.  As a result of the pandemic and associated state court closures, Claimants suffered significant delays in their efforts to consolidate the State Court Actions into a single forum and prosecute their Claims.  In addition, in February 2021, another defendant in the State Court Actions commenced a chapter 7 bankruptcy case[3], through which this defendant debtor and its insurer frustrated Claimants' efforts to lift the automatic stay of the State Court Actions resulting from chapter 7 filing.

### iii.      Global Settlement among WRS, Claimants and WRS' insurer

11.      Despite the COVID-19 pandemic, co-defendant bankruptcy and the resulting delays impacting prosecution of the Claims, Claimants continued to pursue their Claims *to the extent possible*. Claimants were ultimately able to file a master consolidated petition in the 19th JDC; and, *within the week immediately preceding WRS' removal of the State Court Actions to MDLA Court in April 2023*, Claimants had reached an agreement with all defendants in the State Court Actions on terms and dates for a proposed Case Management Order. *See* Exhibit A, *Hooks Declaration* ¶7. In addition, Claimants have reached settlement agreements with multiple parties,

---

[3] *In re Kristina's Transportation, LLC,* Case No. 21-10155, Section A, U.S. Bankruptcy Court for the Eastern District of Louisiana.

including WRS, in part, and its insurer ("Global Settlement Agreement"). The Global Settlement Agreement provided for, *inter alia*, (a) a $3 million payment to Claimants by WRS' insurer, which exhausted WRS' insurance coverage (a Plan prerequisite for Claimants to receive distributions from the Reserve Fund), (b) full release of liability in favor of WRS' insurer, and, (c) *partial* release of liability in favor of WRS.  After all necessary court approvals were obtained (multiple Claimants are/were minors and as such, they were required to obtain court approval to enter into the settlement), WRS' insurer was fully dismissed from the State Court Actions.

12.     Upon the Global Settlement Agreement becoming effective, however, WRS ceased all deposits into the Reserve Fund and, thereafter, filed a motion in the Bankruptcy Court to reopen its Chapter 11 Case ("WRS' Motion to Reopen") for the purpose of recovering for itself all amounts deposited into the Reserve Fund.  This Court denied *WRS' Motion to Reopen*, finding, "the crux of the Reorganized Debtor's argument [was] that the monetary settlement and payment of insurance proceeds to Claimants as well as the releases contained in the Settlement let the Reorganized Debtor entirely off the hook as to its obligations under the confirmed Plan. That is not so."  [Doc. 560].

13.     After this Court declined WRS' request to reopen the Chapter 11 Case, Claimants sought relief in the State Court Actions to enforce the Debtor's Plan obligations with respect to Reserve Fund deposits ("Motion to Enforce").  Based on this Court's rejection of WRS' argument that the Global Settlement Agreement relieved WRS of its Plan obligations, Claimants moved the 19th JDC to enforce such Plan obligations related to the Reserve Fund.  Consistent with its prior efforts to have the Claims tried in federal court, on April 18, 2023, WRS used Plaintiffs' *Motion to Enforce* as a basis to remove the State Court Actions to the MDLA Court.  A motion by Claimants to remand and/or abstain from hearing the State Court Actions ("Motion to Remand")

is currently pending before the MDLA Court, as is WRS' motion to transfer venue of the removed matters to EDLA Court ("Motion to Transfer").  On July 27, 2023, the MDLA Court entered an order cancelling a scheduling conference pending its rulings on Claimants' *Motion to Remand* and WRS' *Motion to Transfer*. *See* MDLA Court Order, attached hereto as Exhibit E.

### D.      The Plan Provisions Relevant to the Claims and this Motion

The Claims are treated as Class 6 Claims under the Plan, which provides in pertinent part:

"Treatment of Class 6 Claims:

Reserve Fund:

In addition to any insurance coverage that may also be available for payment of the Claims in Class 6, the Debtor shall pay $240,000 over the five-year term of the Plan, which amount shall be paid in 60 consecutive monthly installments of $4,000.00 beginning thirty (30) days after the Effective Date of the Third Amended Plan as Modified by the First and Second Immaterial Modification, and continuing on the same date on each month thereafter. The Debtor shall provide this $4,000.00 per month as a contingent contribution to be set aside in the "Reserve Fund" (defined below) for the Class 6, Unliquidated, Contingent Claims as fair and equitable treatment in accordance with 11 U.S.C. §1129. The "Reserve Fund" shall mean a separate reserve bank account for which both the Debtor, and a designee of the Class 6 Claimants are authorized signatories required for any withdrawal or transfer: and, other than expressly set forth herein, no withdrawal from or change to the Reserve Account shall be made without authorization of both of the aforementioned signatories.

Further, Debtor shall set aside 30% of the Company income on IRS Form 1120, Line 11, paid quarterly, less the $4,000.00 per month into the Reserve Fund, for the associated quarter. Such quarterly payments shall begin with the quarter in which the Effective Date falls, beginning in the year 2018 and ending in 2023, or for the life of the Plan. The Reserve Fund will have a cap and limit of $2.5 Million dollars, to be paid should any Judgment(s) be entered into the record assigning liability to Debtor or settlement agreement(s) be entered into by the Debtor during the life of the Plan.

More specifically, quarterly, Debtor shall pay into the Reserve Fund an amount equal to 30% of Line 11 of the IRS Tax Return, Form 1120 to the same extent as Line 11 has been calculated for the Tax Years 2015 and 2016. This quarterly Reserve Fund payment will be calculated and deposited and an Accounting will be provided to Counsel for the Class 6 Unliquidated,

Contingent Claims on the payments to the Reserve Fund; however, this amount shall take into consideration and deduct the $4,000.00 per month contribution to the Reserve Fund already deposited by Debtor. The accounting shall comply with general accepted accounting principles and, at Class 6 Claimants' request, shall be subject to Audit at the cost of such Unliquidated, Contingent Claimants.

*Unless otherwise agreed to by all Class 6 Claimants, the Reserve Fund shall be distributed at the end of the five year life of the Plan on a pro-rata basis in accordance with any final Judgment, or settlement agreement entered into regarding the amounts claimed by the Class 6 Claimants*. Notwithstanding the foregoing, no distribution from the Reserve Fund shall be made absent a final judgment or settlement agreement reflecting the Debtor's obligation to pay one or more Class 6 Claimants; and, then such distribution shall not exceed the amount(s) of any such judgments(s) or settlement agreement(s). If any funds remaining in the Reserve Account, at the end of the five-year Plan period and after payment to all Class 6 Claimants who receive a final Judgment or enter into settlement agreement with the Debtor as provided for herein, any such remaining funds shall be the property of the Reorganized Debtor, Wallace, Rush, Schmidt, Inc."

*Plan* [Doc. 433], §4.5

### E. Status of State Court Actions and Plan Distributions

14. As set forth above, following Plan confirmation, Claimants agreed to consolidate the State Court Actions and have their Claims tried together in a single forum to facilitate the efficient prosecution of the Claims against WRS and other named defendants. Despite repeated setbacks associated with the COVID-19 pandemic and a co-defendant bankruptcy filing, Claimants have been able to reach settlement agreements with multiple defendants and were proceeding toward trial in the 19th JDC until WRS removed the State Court Actions to the MDLA Court. One such settlement, *i.e.,* the Global Settlement Agreement, resulted in a full settlement with WRS' insurer and a partial settlement with WRS. Currently, the State Court Actions remain at a standstill given the MDLA Court's recent order related to the pending *Motion to Remand* and *Motion to Transfer*.

15.     Pursuant to the Plan terms, the Plan became effective on October 13, 2018, and WRS' funding obligations commenced thirty days thereafter on November 12, 2018[4].  Thus, had the Debtor complied with the foregoing Plan provisions, the life of the Plan would be scheduled to end after November 2023; and, under the Plan, the default Distribution Date is tied to the life of the Plan.  The life of the Plan, however, cannot end until WRS has made all payments provided for under the Plan: "The Plan shall terminate upon completion of all payments provided for under the Plan, and compliance by the Debtor with all requirements under the Plan." *Plan*, §10.06.  As set forth above, WRS has failed to complete all payments required under the Plan.   Regardless of the ultimate termination of the Plan's life, based on the circumstances described in this *Motion*, all Class 6 Claimants have agreed to delay the Class 6/Reserve Fund distributions until final judgment has been rendered as to WRS' liability for the Claims. Such agreement of Claimants, however, is without waiver of Claimants' rights related to enforcement of WRS' funding obligations, including causing WRS to supplement its deposits into the Reserve Fund to meet the amounts expressly required under the Plan.

## RELIEF REQUESTED

16.     By this *Motion*, Claimants seek entry of an order reopening the case of the above captioned Debtor for purposes of approving a new Plan Distribution Date for Class 6 Claims.

## BASIS FOR RELIEF REQUESTED

### I.    Cause Exists to Reopen the Chapter 11 Case

17.     Section 350(b) of the Bankruptcy Code provides that "[a] case may be reopened in the court in which such case was closed to administer assets, to accord relief to the debtor, or for other cause." 11 U.S.C. § 350(b).

---

[4] Section 4.5 of the Plan provides for WRS' 60 consecutive monthly installments to begin 30 days after the Plan's Effective Date.

18.     Whether to reopen a bankruptcy case is within the broad discretion of the Bankruptcy Court. *In re Weber*, 283 B.R. 630, 635 (Bankr. D. Mass. 2002); *In re Sheerin*, 21 B.R. 438, 439 (B.A.P. 1st Cir. 1982). The Bankruptcy Code does not define Section 350(b)'s reference to "other cause," and the decision to reopen a bankruptcy case is discretionary. *See In re Easley-Brooks*, 487 B.R. 400, 406-07 (Bankr. S.D.N.Y. 2013). In examining whether "other cause" exists, the court "may consider numerous factors including equitable concerns, and ought to emphasize substance over technical considerations." *In re Kim*, 566 B.R. 9, 12 (Bankr. S.D.N.Y. 2017).

19.     Here, Claimants move to reopen the Chapter 11 Case for purposes directly related to Plan implementation. Specifically, through such reopening, Claimants seek to obtain an order of this Court approving their agreed upon delay of the Distribution Date provided for under the Plan.

20.     Multiple circumstances, outside the control of Claimants, have repeatedly caused delays in the State Court Actions, thus making the default Distribution Date impossible. Specifically, although Claimants have doggedly pursued prosecution of their Claims, making every effort to curtail the delays imposed upon them, Claimants have not yet been able to fully resolve all Claims against WRS. While Claimants have been successful in reaching a settlement with WRS, in part, and its insurer, such settlement resulted only in the partial resolution of WRS' liability for the Claims. Furthermore, the current posture of the State Court Actions, resulting from WRS' recent removal efforts, has made clear to Claimants that full resolution of WRS' liability cannot be achieved by the default Distribution Date.

21.     Section 4.5 of the Plan expressly provides for Claimants' ability to adjust the default Distribution Date: "Unless otherwise agreed to by all Class 6 Claimants, the Reserve Fund shall be distributed at the end of the five year life of the Plan on a pro-rata basis in accordance with

any final Judgment, or settlement agreement entered into regarding the amounts claimed by the Class 6 Claimants." Given the current status of the State Court Actions, Claimants have unanimously agreed to delay the Distribution Date from the default Distribution Date provided for in the Plan until final judgment as to WRS' liability for the Claims has been entered.

## II.      This Court has Jurisdiction to Grant the Requested Relief

22.      As acknowledged by WRS, the Chapter 11 Case was commenced as a result of the State Court Actions.  The Plan, itself, further demonstrates that the Claims represented, by far, the most significant claims against the Debtor's estate. Through negotiations between Claimants and WRS, agreed Plan treatment for the Claims was ultimately achieved by the parties, and confirmed by the Bankruptcy Court. Such treatment expressly contemplated, *inter alia*, (a) liquidation of the Claims through settlement or judgment obtained in connection with the State Court Actions; and, (b) a potential change in the timing of Plan distributions to Claimants. Claimants now seek to reopen the Chapter 11 Case to obtain Court approval of such Distribution Date change. This Court has the statutory authority under Sections 105(a) of the Bankruptcy Code, and Bankruptcy Rule 3020(d) to grant the relief requested; and, this Court has jurisdiction to grant the relief requested by this *Motion* according to the Plan and 28 U.S.C. § 1334.

23.      The Plan provides that this Court retains jurisdiction to grant the relief requested herein. Specifically, the Plan includes the following provision:

> "10.05  Retention of Jurisdiction
> This Plan provides for the Bankruptcy Court to retain jurisdiction over all aspects of the Plan. The specific purposes for which the Bankruptcy Court retains jurisdiction with respect to the reorganization Plan of the Debtor are set forth herein."

> *See Plan*, §10.05 [Doc. 359].

24.      A review of the Plan reveals that retention of jurisdiction is only referenced once in the Plan and then to provide that the Bankruptcy Court would *not* retain jurisdiction in

connection with pre-petition tax claims[5].  *See* Plan, §10.04. Thus, when read with the other terms of the Plan, Section 10.05 can reasonably be construed to provide that the Bankruptcy Court retained jurisdiction over all aspects of the Plan except for those pre-petition tax issues expressly excluded through Section 10.04 of the Plan.   Like other federal courts, bankruptcy courts may retain jurisdiction to interpret and enforce their prior orders. *See Travelers Indem. Co. v. Bailey*, 557 U.S. 137, 151 (2009).

25.      In addition to the authority to grant the relief requested herein by the Plan and the Bankruptcy Code, this Court also has the statutory jurisdiction to grant the requested relief under 28 U.S.C. § 1334(b).  Bankruptcy Courts have jurisdiction to determine claims that "arise under," "arise in," or "relate to" cases under the Bankruptcy Code.  28 U.S.C. § 1334(b). The Fifth Circuit has recognized that a bankruptcy court's post-confirmation jurisdiction is limited: "[a]fter a debtor's reorganization plan has been confirmed, the debtor's estate, and thus bankruptcy jurisdiction, ceases to exist, other than for matters pertaining to the implementation or execution of the plan". *Bank of Louisiana v. Craig's Stores of Texas*, 266 F.3d 388, 390-391, citing *In re Fairfield Communities, Inc*., 142 F.3d 1093, 1095 (8th Cir. 1998); *In re Johns-Manville Corp*., 7 F.3d 32, 34 (2d Cir. 1993).

26.      Claimants seek to reopen the Chapter 11 Case to obtain Court approval over a matter directly pertaining to implementation of the Plan, *i.e.*, the timing of Plan distributions to Claimants (Class 6 Claim holders).   In *Craig's Stores*, the Fifth Circuit found that it lacked jurisdiction over a post-confirmation dispute between the debtor and its lender. *Bank of Louisiana v. Craig's Stores of Texas*, 266 F.3d 388 (5th Cir. 2001).  Although that dispute involved a contract

---

[5]Section 10.04 provides in pertinent part: "Notwithstanding anything in the Plan to the contrary, the Bankruptcy Court shall not retain jurisdiction with respect to *pre-petition tax claims* except for (i) resolving the amount of any state tax claim arising prior to confirmation, and (ii) enforcing the discharge provision of the Plan" (emphasis added).

assumed through the debtor's plan, the Fifth Circuit found that the bankruptcy court did not have post-confirmation jurisdiction over the dispute, finding, *inter alia*, (a) no pending claim between the parties existed as of the reorganization date, (b) the dispute in question dealt primarily with the parties' post-confirmation relations, and, (c) the dispute did not involve interpretation or execution of the debtor's plan. *Craig's Stores*, 266 F.3d 388, 391. The *Craig's Stores* Court held that its ruling was consistent with its prior ruling in *In re Case*[6] where the Court found that post-confirmation jurisdiction existed.   Unlike *Craig's Stores*, the dispute in *Case* involved an obligation established through the debtor's plan, *i.e.*, a promissory note "executed in settlement of a creditor's claim as part of the reorganization plan itself." *Id.*   Like *Case*, the instant matter involves an obligation created through a chapter 11 plan in settlement of a creditor's claims. Specifically, the Reserve Fund was established through the Plan in settlement of the Claims, *i.e.*, the claims which prompted the Debtor's bankruptcy filing.

27.     Through this *Motion*, Claimants seek approval of a new Distribution Date for Plan distributions from the Reserve Fund, a fund "provided for in, and [established] as an integral part of, the settlement agreement and reorganization plan which was confirmed by the bankruptcy court." *See In re Case*, 937 F.2d 1014, 1021.  The Claims prompted the Chapter 11 Case filing; and, the settlement of Claims, encompassed within the Plan, was key to the Debtor's reorganization (plan confirmation was previously denied by this Court when the Debtor proposed a plan providing Claims treatment unacceptable to Claimants).

28.     The relief requested through this *Motion* involves execution of the Plan.  The Plan specifically contemplates a potential change of the default Distribution Date established in the Plan for Class 6 Claims.  As Court approval thereof will directly impact implementation of the Plan,

---

[6] *In re Case*, 937 F.2d 1014 (5th Cir. 1991)

this Court has jurisdiction under 28 U.S.C. § 1334(b) to grant the requested relief.

**III.     Claimants are entitled to this relief under the Plan**

29.     The Reserve Fund was established for the benefit of Claimants to provide a source of funds to satisfy or, at least, partially satisfy any judgments or settlements which exceeded WRS' insurance coverage. Through the Global Settlement Agreement, which exhausted WRS' insurance coverage, Claimants have established that any judgment obtained against WRS will be paid through the Reserve Fund.

30.     The Plan provides that the Distribution Date shall arrive at "the end of the five year life of the plan" absent an agreement of all Class 6 Claim holders to the contrary.  Through this *Motion*, Claimants submit that they have met the requirements for approval of the requested change of the timing of Plan distributions.  As set forth in the *Hooks Declaration*, Claimants have secured the consent of all Class 6 claim holders to delay the Distribution Date until final judgment resolving WRS' Claims liability has been rendered.  *See* <u>Exhibit A</u>, *Hooks Declaration* ¶8. No other creditors of the Debtor's estate have an interest in the Reserve Fund or will be affected by the relief sought herein.

31.     Accordingly, Claimants seek this Court's approval of delay of the Distribution Date until the date on which a judgment resolving WRS' liability for the Claims becomes final.

32.     The filing of this *Motion* shall not be construed as a waiver of any Plan default by WRS or any related rights and remedies of Claimants.  Further, Claimants expressly reserve the right to amend or supplement this action as allowed under the Bankruptcy Rules and/or the Federal Rules of Civil Procedure.

<u>**NOTICE**</u>

33.     Neither 11 U.S.C. § 350(b) nor Rule 5010 prescribe a specific notice requirement. However, undersigned counsel has served a copy of this *Motion* and the related exhibits on the

Debtor, its counsel of record, and all other parties requesting electronic service in the above captioned case.

## **CONCLUSION**

The relief requested in this *Motion* is to permit Claimants to seek relief that was specifically contemplated under the Plan.  The foregoing constitutes sufficient cause to reopen the Chapter 11 Case, and to grant the requested relief.

**WHEREFORE**, Claimants respectfully request that this Court reopen the Chapter 11 Case for the purposes set forth herein; and, grant such other and further relief it deems necessary and appropriate.

Dated: September 6, 2023                    Respectfully submitted,

**THE STEFFES FIRM, LLC**

/s/ Barbara B. Parsons
Barbara B. Parsons (#28714)
13702 Coursey Blvd., Building 3
Baton Rouge, Louisiana 70817
Telephone: (225) 751-1751
Facsimile: (225) 341-1241
E-mail: bparsons@steffeslaw.com

*Bankruptcy Counsel for Claimants*

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF LOUISIANA**

IN RE:                                                          CHAPTER 11

**WALLACE, RUSH, SCHMIDT, INC.,**                    **CASE NO. 17-10698**

**DEBTOR**                                              **SECTION "A"**

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing *Joint Motion of Class 6 Claimants' to Reopen*

*Chapter 11 Case* has been served via Email through this Court's CM/ECF Electronic Notification

System to the following parties:

Christy R. Bergeron on behalf of Creditor Paychex Advance, LLC CBergeron@RLLaw.com
Miriam Brooks on behalf of Interested Party Miriam Remer Georges-Pierre, PLLC mbrooks@rgpattorneys.com
Richard Theodore Haik, Jr. on behalf of Creditor Nicholas Saale richardh@mmrblaw.com
Kenneth H. Hooks, III on behalf of Interested Party Princess Sherrod kenny@dodsonhooks.com
Mary S. Langston on behalf of U.S. Trustee Office of the U.S. Trustee Mary.Langston@usdoj.gov
Andrew A. Lemmon on behalf of Interested Parties Adriane Gaines and Toni Ingram andrew@lemmonlawfirm.com
Christopher McCall on behalf of Movant Daniella Maciel DeSouza cmccall@baggettmccall.com
Edward Lee Moreno on behalf of Interested Party Emiliano Acosta emoreno@redmannlaw.com
H. Edward Sherman on behalf of Creditor Jennifer Guidry Chauvin nolaatty4u@gmail.com
Matthew Paul Skrabanek on behalf of Interested Party David Jones paul@psbfirm.com
Dwazendra J. Smith on behalf of Interested Party Marcus Tate dwa@doranlawfirm.com
Office of the U.S. Trustee USTPRegion05.NR.ECF@usdoj.gov
David Vicknair on behalf of Creditor De'Marcus Thomas david@svhclaw.com
Phillip K. Wallace on behalf of Debtor Wallace, Rush, Schmidt, Inc. PhilKWall@aol.com

Baton Rouge, Louisiana, this 6th day of September, 2023.

/s/ Barbara B. Parsons
Barbara B. Parsons