**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | § | |
|---|---|---|
| IN RE: | § | CASE NO: 17-10698 |
| | § | |
| WALLACE, RUSH, SCHMIDT, INC. | § | CHAPTER 11 |
| | § | |
| DEBTOR. | § | SECTION A |

**MEMORANDUM OPINION AND ORDER**

Before the Court is the *Debtor's Motion To Re-Open Chapter 11 Case To Enforce Plan Provisions* and the accompanying memorandum in support (together, the "Motion"), [ECF Docs. 540 & 541], filed by Wallace, Rush, Schmidt, Inc. (the "Reorganized Debtor") pursuant to 11 U.S.C. § 350(b). An opposition to the Motion has been filed by Jennifer Guidry Chauvin (individually and as the administratrix for the estate of Spencer Chauvin and as tutrix for Jade Michel Chauvin and Judge Lewis Chauvin), Princess Sherrod (on behalf of minor child A.S. David Jones), Nicholas and Rebekah Saale (individually and on behalf of minor child C.S. Sulma Almendarez-Rivas), Jenyfer Espinal Almendare (individually and on behalf of L.E.A.), Emiliano Acosta (individually and on behalf of E.A.), Keyla Gonzalez, Maiela Bardales, Kenia Gonzalez, Glenny Berroa, Fatima Berroa, Daniella Macial De Souza (on behalf of her minor child V.M.K.), and Marcus Tate and Christina Tate (individually and on behalf of minor children M.T., A.T. and M.J.) (collectively, the "Claimants"). [ECF Doc. 548]. The Reorganized Debtor filed a reply brief in support of the Motion. [ECF Doc. 550].

Through the Motion, the Reorganized Debtor asks this Court to reopen the main case so that the Reorganized Debtor can file an adversary proceeding seeking turnover of funds currently

held in a fund established by the confirmed plan of reorganization in this case for the benefit of the Claimants. For the reasons discussed below, the Court **DENIES** the Motion.

## JURISDICTION AND VENUE

This Court has jurisdiction to grant the relief provided for herein pursuant to 28 U.S.C. § 1334. "[T]he bankruptcy court retains post-confirmation jurisdiction to interpret and enforce its own orders in aid of their proper execution." *In re Johns–Manville Corp.,* 97 B.R. 174, 180 (Bankr. S.D.N.Y .1989); *see also Wildwood Prop. Owners Ass'n v. Bordelon (In re Wildwood Prop. Owners Ass'n)*, Adv. No. 14-3292, 2017 WL 3189874, at *2 (Bankr. S.D. Tex. July 25, 2017) (citing *Travelers Indem. Co. v. Bailey*, 557 U.S. 137, 151 (2009); *Baker v. Baker (In re Baker)*, 593 F. App'x 416, 417 (5th Cir. 2015)). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## BACKGROUND

Prior to the Debtor filing its petition for bankruptcy relief, the Claimants asserted tort claims against the Debtor and others in Louisiana state court emanating from an August 2016 accident involving multiple serious injuries and death. The Debtor sought bankruptcy protection two years after the 2016 accident before any judgment was rendered in those consolidated state court actions or a settlement was reached with the Claimants.

The Debtor filed its *Third Amended Plan of Reorganization Propounded by Debtor* on June 20, 2018 (the "Plan"). [ECF Doc. 359]. The Debtor modified that Plan three times prior to confirmation: first on June 21, 2018 (the "First Plan Modification"), [ECF Doc. 361]; again on August 30, 2018 (the "Second Plan Modification"), [ECF Doc. 417]; and for the final time on September 6, 2018 ("Third Plan Modification"), [ECF Doc. 433]. This Court confirmed the Plan on September 13, 2018. [ECF Doc. 438]. The Confirmation Order specifically references and

incorporates the Second Plan Modification and the Third Plan Modification, but not the First Plan Modification. *See id.* (referencing ECF Docs. 417 & 433).[1]

The Third Plan Modification classified the Claimants in Class 6 in the Plan and provided that any judgment or settlement of the Claimants' claims "shall be covered and paid by [the Debtor's] insurers," adding that "Debtor shall pay only any excess of a final judgment or settlement amount obtained during the life of the plan that is not covered by Debtor's insurance carriers . . . ." [ECF Doc. 433, at 1–2]. But the Third Plan Modification also established a "Reserve Fund" for the benefit of Class 6 Claimants to provide recovery over and above insurance proceeds:

> **In addition to any insurance coverage that may also be available for payment of the Claims in Class 6, the Debtor shall pay $240,000 over the five-year term of the Plan, which amount shall be paid in 60 consecutive monthly installments of $4,000.00 beginning thirty (30) days after the Effective Date of the Third Amended Plan as Modified by the First and Second Immaterial Modification, and continuing on the same date on each month thereafter.** The Debtor shall provide this $4,000.00 per month as a contingent contribution to be set aside in the "Reserve Fund" (defined below) for the Class 6, Unliquidated, Contingent Claims as fair and equitable treatment in accordance with 11 U.S.C. § 1129. The "Reserve Fund" shall mean a separate reserve bank account for which both the Debtor, and a designee of the Class 6 Claimants are authorized signatories required for any withdrawal or transfer; and, other than expressly set forth herein, no withdrawal from or change to the Reserve Account shall be made without authorization of both of the aforementioned signatories.
>
> **Further, Debtor shall set aside 30% of the Company income on IRS Form 1120, Line 11, paid quarterly, less the $4,000.00 per month into the Reserve Fund, for the associated quarter. Such quarterly payments shall begin with the quarter in which the Effective Date falls, beginning in the year 2018 and ending in 2023, or for the life of the Plan.** The Reserve Fund will have a cap and limit of $2.5 Million dollars, to be paid should any Judgment(s) be entered into the record assigning liability to Debtor or settlement agreement(s) to be entered into by the Debtor during the life of the Plan.
>
> More specifically, quarterly, Debtor shall pay into the Reserve Fund an amount equal to 30% of Line 11 of the IRS Tax Return, Form 1120 to the same extent as Line 11 has been calculated for the Tax Years 2015 and 2016. **This quarterly Reserve Fund payment will be calculated and deposited and an**

---

[1] As to the treatment of Class 6 Claimants, the Second Plan Modification and the Third Plan Modification are identical.

3

>    **Accounting will be provided to Counsel for the Class 6 Unliquidated, Contingent Claims on the payments to the Reserve Fund**; however, this amount shall take into consideration and deduct the $4,000.00 per month contribution to the Reserve Fund already deposited by Debtor. The accounting shall comply with general accepted accounting principles and, at Class 6 Claimants' request, shall be subject to Audit at the cost of such Unliquidated, Contingent Claimants.
>
>    Unless otherwise agreed to by all Class 6 Claimants, the Reserve Fund shall be distributed at the end of the five-year life of the Plan on a pro-rata basis in accordance with any final Judgment, or settlement agreement entered into regarding the amounts claimed by the Class 6 Claimants. Notwithstanding the foregoing, no distribution from the Reserve Fund shall be made absent a final judgment or settlement agreement reflecting the Debtor's obligation to pay one or more Class 6 Claimants; and, then such distribution shall not exceed the amount(s) of any such judgments(s) [*sic*] or settlement agreement(s). **If any funds remain in the Reserve Account, at the end of the five-year Plan period <u>and</u> after payment to all Class 6 Claimants who receive a final Judgment or enter into settlement agreement with the Debtor as provided for herein, any such remaining funds shall be the property of the Reorganized Debtor, Wallace, Rush, Schmidt, Inc.**
>
>    . . . .
>
>    If and only if any excess Judgment of Liability against the Debtor above and beyond insurance coverage is rendered by the Federal or State Court proceedings or a settlement agreement has been entered into with the Debtor during the life of the Plan, such amount shall be paid by the Debtor pro-rata from the Reserve Fund as described hereinabove to Class 6 Claimants.

[ECF Doc. 433, at 4–7 (emphasis added)]. At the time of confirmation, the amount of claims asserted against the estate by the Claimants totaled approximately $29 million. *See id*. at 7.

On May 10, 2019, the Reorganized Debtor filed a motion for a final decree of this Court, asserting that its obligations under the confirmed Plan had been substantially completed. [ECF Doc. 514]. The Claimants objected to that motion, explaining that, although the Reorganized Debtor had deposited $4,000 per month into the Reserve Fund during the eight months that had elapsed since confirmation of the Plan, the Reorganized Debtor had failed to deposit any required quarterly payments into the Reserve Fund or provide the required accountings described in the Plan to Claimants' counsel. [ECF Doc. 519, ¶¶ 2–3]; *see also* [ECF Doc. 520].

4

On June 14, 2019, the Reorganized Debtor and the Claimants entered into the following stipulation to resolve the contested motion for final decree:

> **B. STIPULATION**:  For good and valuable consideration, the receipt and sufficiency of which consideration is hereby acknowledged, the Debtor and [Claimants] stipulate and agree as follows:
>
> > 1. On June 10, 2019, the Debtor deposited $172,957.02 into the Reserve Fund for [Claimants'] claims pursuant to Section 4.5 of the Plan; and,
> >
> > > i.  Beginning on July 30, 2019 for the second quarter of 2019, and continuing thereafter within forty-five (45) days following each of the next consecutive quarters through the fourth quarter of 2023, the Debtor will provide to counsel for [Claimants] its income statement for the immediately preceding quarter (*e.g.*, on November 15, 2019, and income statement for July-September 2019 will be provided to [Claimants'] counsel); and, the Debtor shall deposit the quarterly payments, if and as due under the Plan, into the Reserve Fund within forty-five (45) days following each of the quarters.
> > >
> > > ii. This stipulation shall not affect the Debtor's ongoing obligations to deposit monthly payments into the Reserve Fund as set forth in the Plan.

[ECF Doc. 526].  With that stipulation entered into the record, the Court entered a Final Decree on June 17, 2019.  [ECF Doc. 527].

## DISCUSSION

In the Motion, the Reorganized Debtor seeks to reopen the case under § 350(b) of the Bankruptcy Code prior to the expiration of the five-year term of the Plan (October 13, 2023)[2] for purposes of "administration and finalization of the Debtor's Confirmed Plan."  [ECF Doc. 541, ¶ 13].  Citing a *Global Confidential Settlement and Release Agreement* (the "Settlement"), executed among Claimants, the Reorganized Debtor, and one of its insurers, and attached as an exhibit to the Motion, the Reorganized Debtor now asserts that the funds currently held in the

---

[2] Under § 8.02 of the Plan, the Plan became effective thirty days following the date of entry of the Confirmation Order, or October 13, 2018. [ECF Doc. 359]. No Order staying the Confirmation Order was issued by the Court.

5

Reserve Fund are property of the estate pursuant to the plain terms of the Confirmation Order and confirmed Plan. [ECF Doc. 540, ¶¶ 9–12 & Ex. B]. Thus, should this Court reopen the case as requested, the Reorganized Debtor intends to initiate an adversary proceeding seeking turnover of amounts currently held in the Reserve Fund. [ECF Doc. 540, ¶¶ 9–12; ECF Doc. 541, ¶ 12].

Policy considerations favor finality in bankruptcy cases. Both a debtor and its creditors must be able "to rely on the conclusiveness of bankruptcy proceedings as they move beyond bankruptcy." *In re Quigley*, 584 B.R. 820, 824 (Bankr. W.D. Tex. Oct. 2017) (citing *Russell v. Tadlock (In re Tadlock)*, 338 B.R. 436, 439 (B.A.P. 10th Cir. 2006)). That said, however, § 350(b) allows a case to be reopened "in the court in which such case was closed to administer assets, to accord relief to the debtor, or for other cause."[3] Thus, "[m]otions to reopen generally involve a weighing of competing policy considerations: the bankruptcy policy of providing a deserving debtor with a fresh start; and the bankruptcy policy of providing, in an expedient manner, finality to those disputes which arise between debtors and creditors." *In re Gagne*, No. 02-10966, 2010 WL 5209243, at *1 (Bankr. D. Me. Dec. 16, 2010) (internal quotations and citations omitted).

As an initial matter, the Reorganized Debtor here erroneously relies heavily on terms for Class 6 treatment that were included in in the First Plan Modification, which was not approved and confirmed by this Court. The deal struck between the Debtor and the Class 6 Claimants that was confirmed by the Court is contained in the Second and Third Plan Modifications and incorporated in the Confirmation Order. But the crux of the Reorganized Debtor's argument is

---

[3] The phrase "or other cause" gives the Court "discretion to reopen a closed estate or proceeding when cause for such reopening has been shown." *Citizens Bank & Tr. Co. v. Case (In re Case)*, 937 F.2d 1014, 1018 (5th Cir. 1991) (citations omitted). The "for cause" catch-all grants a bankruptcy court broad discretion in reopening a case, on a case-by-case basis. *Id.* Indeed, the Court "may consider numerous factors including equitable concerns, and ought to emphasize substance over technical considerations." *In re Kim*, 566 B.R. 9, 12 (Bankr. S.D.N.Y. 2017).

that the monetary settlement and payment of insurance proceeds to Claimants as well as the releases contained in the Settlement let the Reorganized Debtor entirely off the hook as to its obligations under the confirmed Plan. That is not so.

First, the Reserve Fund created by the Plan is designed to provide recovery over and above any recovery provided by insurance proceeds. [ECF Doc. 433, at 4–7]. Moreover, contrary to the Reorganized Debtor's interpretation of the effects of the Settlement, a plain reading of the Settlement reveals that the Reorganized Debtor received only a partial release from liability for claims asserted by Claimants and covered by policies of the insurer that is a party to the Settlement:

> **HOWEVER**, this release is subject to and limited only by each Claimant's right: (1) to pursue [Reorganized Debtor] to the extent it carries other valid and collectible insurance issued by insurers other than [settling insurer] and/or any insurer corporately affiliated with [settling insurer group][;] (2) to pursue [Reorganized Debtor] to the extent it is an additional insured under [certain policy] issued by National Liability & Fire Insurance Company to Kristina's Transportation, LLC; **and (3) to seek recovery for any amounts [Reorganized Debtor] has paid or will pay into the reserve fund approved by the Bankruptcy Court in In re: Wallace, Rush, Schmidt, U.S. Bankruptcy Court, E.D. La. Case No. 17-10698.**

[ECF Doc. 540, Ex. B, § 4(b) (emphasis added)].

Finally, the Confirmation Order and Plan provisions contemplate a five-year term on the Plan and require the Reorganized Debtor to make monthly and quarterly deposits into the Reserve Fund until at least October 2023 or "for the life of the Plan." [ECF Doc. 433, at 1–8]. At best, the Reorganized Debtor's motion is premature, as conditions precedent have not been met: "If any funds remaining in the Reserve Account, at the end of the five-year Plan period <u>and</u> after payment to all Class 6 Claimants who receive a final Judgment or enter into settlement agreement with the Debtor as provided for herein, any such remaining funds shall be the property of the Reorganized Debtor, Wallace, Rush, Schmidt, Inc." [ECF Doc. 433, at 5–6].

For the foregoing reasons, the Court finds that the Reorganized Debtor has not demonstrated the existence of estate assets to administer, any relief that could be accorded the Reorganized Debtor, or "other cause" that would justify reopening the case. The Court interprets the Motion to be an attempt to renegotiate or retrade on the terms of the Plan that it negotiated with its creditors and this Court confirmed, which is not a proper use of § 350(b) of the Bankruptcy Code. The Court declines, however, to consider sanctions against the Reorganized Debtor for pursuing the Motion as requested by the Claimants in their opposition to the Motion.

For the foregoing reasons,

**IT IS ORDERED** that the Motion is **DENIED**.

New Orleans, Louisiana, December 28, 2022.

_____
MEREDITH S. GRABILL
UNITED STATES BANKRUPTCY JUDGE